# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BECKY L. MORRIS,

    Plaintiff,

v.                                  Civil Action 2:18-cv-374
                                       Judge Algenon L. Marbley
                                       Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Becky L. Morris, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED** and that judgment be entered in favor of Defendant.

## I. BACKGROUND

### A. Prior Proceedings

Plaintiff filed an application for Disability Insurance Benefits on November 4, 2014, alleging disability beginning on June 20, 2014. (Tr. 186, PAGEID #: 228). Her application was denied initially (Tr. 126–29, PAGEID #: 167–70), and again on reconsideration (Tr. 133, PAGEID #: 174). After a hearing, Administrative Law Judge Matthew Winfrey ("the ALJ") issued an unfavorable decision. (Tr. 44–55, PAGEID #: 83–94). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (Tr. 1–4, PAGEID #: 40–43).

Plaintiff filed this action on April 23, 2018 (Doc. 1), and the Commissioner filed the administrative record on July 25, 2018 (Doc. 8). Plaintiff filed a Statement of Specific Errors on September 14, 2018 (Doc. 11), the Commissioner responded on October 24, 2018 (Doc. 13), and Plaintiff filed a Reply (Doc. 14).

**B. Relevant Testimony at the Administrative Hearing**

Plaintiff was 49 years at old at the time of the hearing. (Tr. 66, PAGEID #: 105). She testified that she lives in a mobile home and receives a monthly payment of $115.00 from the State. (Tr. 68, PAGEID #: 107). Plaintiff last worked in June 2014 as a receptionist at Primecare of Southeastern Ohio. (*Id*.). She believes she was fired from that job because her medications caused her to make mistakes. (Tr. 69, PAGEID #: 108). Before that, she worked as a tacker at a flag making company for six months. (*Id*.). Prior to working at the flag company, she worked as a medical receptionist at a hospital. (Tr. 70, PAGEID #: 109).

When asked why she believes she cannot work, Plaintiff answered that, due to pain, she cannot stand or sit for long periods of time. (Tr. 73, PAGEID #: 112). When she sits, she experiences pain in her left hip and right leg. (*Id*.). She also experiences "constant" pain across her lower back and finds that soaking in the bathtub and using ice and heat therapy provides only temporary relief. (Tr. 75, PAGEID #: 114). Plaintiff experiences temporary pain relief from physical therapy. (*Id*.). Injections also help to relieve Plaintiff's pain for up to one week. (*Id*.). Plaintiff also testified that her medications make her tired but help to alleviate pain, though not entirely. (Tr. 75–76, PAGIED #: 114–15).

Plaintiff testified that her pain began after a 1984 car accident. (Tr. 77, PAGEID #: 116). She had back surgery in 2007 and again in 2008. When asked about the possibility of additional surgeries, Plaintiff explained that her pain specialist told her that her surgeries only cause more

2

complications and that her injections would ultimately "take hold." (Tr. 66, PAGEID #: 115). She testified that she can "push herself" once a week to walk a fourth of a mile but that she experiences pain afterwards. (Tr. 80, PAGEID #: 119). She explained that her doctors would like her to lose weight but that she has a difficult time doing so because she experiences pain during exercise. (*Id.*).

As for her daily activities, Plaintiff has difficulty putting on her socks and shoes and spends most of her days lying down and listening to the radio or reading. (Tr. 82, PAGEID #: 121). She enjoys spending time outside but trips easily on uneven surfaces. (*Id.*). She testified that she always has the TV on and occasionally talks to a friend on the phone. (*Id.*). She is able to vacuum her house, albeit with difficulty, and can do the dishes. (*Id.*). She is also able to grocery shop, although doing so is difficult because the grocery store triggers her social anxiety and because she has difficulty carrying her groceries and putting them away. (Tr. 80–82, PAGEID #: 119–21).

Finally, a vocational expert ("VE") testified that Plaintiff could perform the unskilled positions of printed circuit board inspector, table worker, and film touch up inspector. (Tr. 90–91, PAGEID #: 129–30).

### C. Relevant Medical Background

Plaintiff's argument concerns her physical impairments only, and the Court thus examines the relevant medical evidence pertaining to the same.

The record documents Plaintiff's chronic pain, primarily in her lower back, legs, and hips. Plaintiff underwent disc surgery in 2008 and spinal fusion surgery in 2007. (Tr. 287, PAGEID #: 331). After a physical examination, Dr. David Stainbrook, a board-certified rheumatologist, diagnosed Plaintiff with severe knee pain, history of osteoarthritis, fatigue, severe neck pain, severe back pain, and a history of osteoarthritis in the knees, among other issues. (*Id.*). Plaintiff

3

described her pain as aching with occasional sharp back pain that radiates into her buttocks, bilateral knee pain, and knots in the neck. (Tr. 342, PAGEID #: 386). The record documents that Plaintiff continued to report chronic pain and was subsequently referred to pain management, where she underwent facet injections, radiofrequency ablation, and nerve blocks. (*See* Tr. 350– 51, PAGEID #: 394–95; Tr. 473–76, PAGEID #: 517–20; *see generally* Tr. 603–69, PAGEID #: 648– 714).

September 2014 examination notes show tenderness and decreased range of motion, but also note normal strength and no reflex, motor or sensory deficit. (Tr. 348, PAGEID #: 392). A January 2015 lumbar spine x-ray showed degenerative disc disease and degenerative joint disease. (Tr. 495, PAGEID #: 539). In January and February of 2015, Dr. Ripal Parikh, a physician with Knox County Hospital, wrote several letters to Plaintiff's primary care physician, Dr. Phillip Short, updating Dr. Short about Plaintiff's chronic back pain and courses of treatment. (Tr. 450–51, PAGEID #: 494–95; Tr. 464–65, PAGEID #: 508–09; Tr. 466–67, PAGEID #: 510–11). Dr. Parikh's January 2015 examination notes show tenderness in the back, pain along the lumbar paraspinal region, pain with bending and twisting, positive standing flexion testing, and weakness in the gluteal muscles. (Tr. 467, PAGEID #: 511).

In March 2015, Dr. Short completed a medical source statement form and opined that Plaintiff could lift only up to ten pounds and frequently lift up to five pounds. (Tr. 388, PAGEID #: 432). He also opined that Plaintiff could stand and walk for only two hours and could sit for only two hours in an eight-hour workday. (*Id.*). Dr. Short also limited Plaintiff to occasional squatting and crawling, and precluded Plaintiff from bending, climbing or being around unprotected heights. (*Id.*).

4

In June 2016, Dr. Short completed a second medical source statement form. (Tr. 671, PAGEID #: 716). Dr. Short opined that Plaintiff's physical functioning had worsened and limited her to occasionally lifting up to five pounds, standing and walking for only one hour, and sitting for only one hour. (*Id*.). He further opined that Plaintiff needed the ability to frequently change positions and that she was precluded from bending, squatting, crawling, or climbing, and also from unprotected heights, hazards, and commercial driving. (*Id*.).

**D. The ALJ's Decision**

Plaintiff's argument concerns her physical impairments only, and consequently the Court examines the relevant portions of the ALJ's decision pertaining to the same.

After reviewing the medical evidence as a whole, the ALJ found that Plaintiff had the following severe impairments: status post remote lumbar laminectomy/fusion; degenerative disc disease and degenerative joint disease of lumbar spine; obesity; major depressive disorder and anxiety. (Tr. 46, PAGEID #: 85). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (*Id*.). The ALJ concluded that "[a]fter careful consideration of the evidence," Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 49–50, PAGEID #: 88–89). The ALJ elaborated on how he reached that conclusion:

> On examination, the claimant is noted to have tenderness to palpation and decreased range of motion; yet, she remained neurologically intact with normal strength and no reflex, motor or sensory deficit noted, with the exception of some weakness at the gluteal muscles. She has intermittently been noted to have a steady gait and an antalgic gait, with the deficits noted more recently in 2016. Moreover, the effects

5

of the claimant's obesity were considered in assessing the claimant's residual functional capacity pursuant to Social Security Ruling 02-01p.

(Tr. 50, PAGEID #: 89).

As to Plaintiff's RFC, the ALJ opined:

[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps stairs, but not ladders, ropes or scaffolds; occasionally stoop and kneel, but no crouching or crawling, can occasionally be exposed to unprotected heights. She is limited to simple routine repetitive tasks not at production rate, such as no assembly line work; able to respond and interact appropriate [sic] with supervisors, coworkers and the public occasionally and can tolerate occasional changes in work place and could be off task up to eight percent of the workday.

(*Id.*, Tr. 48–49, PAGEID #: 87–88) (internal citations omitted).

As for the opinion evidence, the ALJ assessed Dr. Short's physical limitations, as documented on two physical capacity evaluations. (*Id.* at 52). The ALJ assigned Dr. Short's first physical capacity evaluation "some weight." (*Id.*). The ALJ had the following to say about Dr. Short's first evaluation:

On March 26, 2015, Phillip Short, MD, filled out a Physical Capacity Evaluation providing that for example, the claimant could lift and carry up to 10 pounds occasionally, stand/walk for up to two hours in an eight-hour day and sit for two hours in an eight-hour day. Although Dr. Short is one of the claimant's treating sources, the undersigned gives his opinion only some weight. While the undersigned finds the record supports the claimant is limited to sedentary work, the evidence does not support the assertion that the claimant is only able to sit for two hours in an eight-hour day. Of note, a few days prior to filling out this form, the claimant reported that an injection helped her back pain, but that her depression was getting worse. There are no findings documented on examination that would support such an extreme limitation on sitting. Moreover, in considering the totality of the record, the evidence simply does not support such limitation. Further, Dr. Short appears to primarily treat the claimant for her psychiatric condition and refill pain medications, without actually treating the claimant for her back conditions, which suggests the limits are based in [sic] the claimant's subjective complaints and not objective findings. Therefore, the undersigned gives Dr. Short's opinion partial weight insofar as it is consistent with the above assessed physical residual functional capacity.

6

(*Id.*) (internal citations omitted). The ALJ next assigned Dr. Short's second physical capacity evaluation "little weight." The ALJ said this about Dr. Short's second evaluation form:

> Dr. Short provided another Physical Capacities Evaluation form providing, in part, the claimant only occasionally lift/carry five pounds occasionally, sit for one hour in an eight-hour day and stand/walk for only one hour in an eight hour day. Of note, although Dr. Short is the claimant's primary care provider, most of his treatment of the claimant surrounds her depression. Moreover, aside from the claimant's complaints, Dr. Short's treatment notes do not offer any support for the essentially bedridden opinion. The records do not document significant physical examination findings in the record that would support such extreme limitations. Therefore, the undersigned gives Dr. Short's opinion little weight.

(*Id.*) (internal citations omitted). Additionally, the ALJ assigned Dr. Short's statements that Plaintiff "is not able to work" and "isn't employable" little weight, explaining that such comments "speak to issues reserved to the Commissioner" and that they "offer no function-by-function analysis of what the claimant can do or vocationally relevant limits caused by her impairments." (*Id.*) (internal citations omitted).

Finally, the ALJ considered the opinion of the Bureau of Disability Determination medical consultants. (Tr. 52–53, PAGEID #: 91–92). The ALJ assigned these opinions "some weight" because the evidence showed that Plaintiff is "more limited" than determined by the State consultants. (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts one assignment of error: that the ALJ failed to provide the requisite good reasons for discrediting Dr. Short's opinions. (*See generally* Doc. 11).

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). However, "an ALJ may properly reject a treating physician's opinion that does not meet these standards." *Mixon v. Colvin*, 12 F.

Supp. 3d 1052, 1063–64 (S.D. Ohio 2013) (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529–31 (6th Cir. 1997).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakley*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550–51 (6th Cir. 2010). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

The ALJ in this case declined to give controlling weight to Dr. Short's opinions documented on two physical capacity evaluations, one from March 2015 and one from June 2016. The ALJ explained that he assigned Dr. Short's opinions little weight because: (1) the evidence of record fails to support Dr. Short's "extreme limitation on sitting" (Tr. 52, PAGEID #: 91); and (2) Dr. Short "appears to primarily treat the claimant for her psychiatric condition and refill pain

9

medications, without actually treating the claimant for her back conditions, which suggests the limits are based on te [sic] claimant's subjective complaints and not objective findings." (*Id.*). The Court finds that substantial evidence supports the ALJ's decision and that the ALJ provided good reasons, consistent with his obligation under the regulations, for discounting Dr. Short's opinion.

First, the ALJ reasonably concluded that because the record documents Plaintiff's marked improvements and relief from pain treatment, the record as a whole did not support Dr. Short's opinions. (Tr. 52, PAGEID #: 91). For example, the ALJ acknowledged Plaintiff's history of spinal surgery in 2006 and 2007, in addition to more recent imaging showing spinal abnormalities. (Tr. 50, PAGEID #: 89). The ALJ noted, however, that Plaintiff's treatment for her back pain consisted of medication refills from Dr. Short and visits to a pain management doctor for facet injections, radiofrequency, ablation, and nerve blocks, all of which provided documented symptom relief for Plaintiff. (*Id.*). The ALJ further cited the fact that on exam, Plaintiff had tenderness to palpation and decreased range of motion but remained neurologically intact with normal strength and no reflex, motor, or sensory deficits. (*Id.*). And, the ALJ noted that Plaintiff herself indicated that her pain had improved. (Tr. 51, PAGEID #: 90).

Plaintiff responds that Dr. Short's opinion is supported by the record and relies on MRIs showing severe arthropathy and physical exam notes documenting her chronic pain. (Doc. 11 at 9). The Court notes, however, that even if the record contains evidence that may support Plaintiff's argument, under the substantial evidence standard, the ALJ's findings are "not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Mixon*, 12 F. Supp. 3d at 1064 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1996)). Rather, it is

the ALJ's "function to resolve conflicts in the evidence," *see Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir.1987), and that is exactly what the ALJ did here. *Id.* Accordingly, the ALJ was well within his discretion in finding that normal examination findings and documented pain relief did not support Dr. Short's opined limitations.

Second, the ALJ reasonably discounted Dr. Short's physical limitations because Dr. Short primarily treated Plaintiff's psychiatric issues, rather than her chronic pain. The Court has conducted an independent review of the record and finds that substantial evidence supports this conclusion. It appears that while Dr. Short had knowledge of Plaintiff's chronic pain and corresponding treatment, he treated Plaintiff primarily for her mental health symptoms, while pain specialists attended to her chronic pain. (*See, e.g.*, Tr. 514, PAGEID #: 558 (listing "reason for visit" as "tearful, depression—patient is here because of some worsening depressive symptoms"); Tr. 518, PAGEID #: 562 (noting "primary" diagnosis as depression, reporting Plaintiff's issues with stress and depression, and further noting that Plaintiff "continues to follow [up] with Dr. Parikh in Mount Vernon, Ohio for chronic pain. She has been receiving spinal and facet injections in her back without much success. She denies any suicidal ideation. She is not able to exercise due to her back pain. The back pain limits her ability to ambulate or bend or stoop."); Tr. 522, PAGEID #: 566 (noting that Plaintiff "continues to follow up with her chronic pain doctor regarding her back pain," that "her depression is very well controlled" on medications and that she still takes Xanax for anxiety); Tr. 526, PAGEID #: 570 (noting Plaintiff's progress on depression medications and that Plaintiff "follows [up] with her chronic pain physician in Knox County."); Tr. 530, PAGEID #: 574 (listing "reason for visit" as "talk about depression," noting Plaintiff's issues with depression and that Plaintiff "is following [up] with her chronic back pain doctor.")).

Plaintiff maintains, however, that Dr. Short treated Plaintiff for both physical and mental health issues. (Doc. 11 at 8, Doc. 14 at 2). In support, she relies on the fact that her back diagnoses were listed in Dr. Short's records. (Doc. 11 at 8). Moreover, Plaintiff asserts that Dr. Short "discuss[ed] issues dealing with both physical and mental health problems such as receiving spinal and facet in [sic] injections in her back without much success," that Dr. Short would note her chronic back pain, and that he was "privy to other clinical objective evidence from other medical providers such as MRIs." (Doc. 11 at 8). Plaintiff also notes the fact that, on several occasions, Plaintiff's pain management doctor, Dr. Parikh, wrote to Dr. Short about Plaintiff's back issues. (*Id*. at 9).

These arguments fall short. While Plaintiff is correct that Dr. Short's records contain her back diagnoses and treatment received from specialists, Dr. Short's records do not show his own examination findings or other evidence in his own treatment notes to support his extreme physical limitations. *See Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990) (noting that diagnosis of an impairment does not lend support to a finding of disability). In other words, the fact that Dr. Short had access to pain specialists' treatment records, does not in turn mean that he himself was in a position to opine on Plaintiff's physical limitations, especially considering that he mainly treated Plaintiff for her mental health conditions.

Accordingly, the Court finds that the ALJ reasonably concluded that Dr. Short's treatment notes did not document physical examination findings that would support his limitations concerning Plaintiff's physical abilities. *See* 20 C.F.R. SEC 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). *See also Eddy v. Comm'r of Soc. Sec.*, 506

F. App'x 508, 509 (6th Cir. 2012) (affirming ALJ's decision discounting treating physician's opinion because it was "not adequately explained or supported by [plaintiff's] treatment records.") (internal quotation marks omitted); *Driggs v. Astrue*, No. 2:11-cv-229, 2011 WL 5999036 at *6 (S.D. Ohio Nov. 29, 2011) (holding that "an ALJ may reject the opinion of a treating source where the treating physician's opinion is inconsistent with [that source's] own medical records.") (internal quotation mark and citation omitted).

Relatedly, the ALJ was well within his discretion in concluding that because Dr. Short only refilled Plaintiff's pain medications and did not appear to treat her back condition, Dr. Short's opined limitations were more than likely based on Plaintiff's subjective complaints rather than Dr. Short's objective findings. (Tr. 52, PAGEID #: 91). *See Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (supporting an ALJ's decision to give little weight to a medical opinion where that opinion relied too heavily on subjective complaints); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) (holding that substantial evidence supported the ALJ's decision discounting treating source's opinion because it was based on claimant's "subjective complaints, rather than objective medical data.").

In sum, the ALJ's decision contained good reasons, consistent with the regulations, for declining to assign controlling weight to Dr. Short's opinions. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (noting that the ALJ's reasoning that the treating physician's "conclusions were not well supported by the overall evidence of record and were inconsistent with the other medical evidence of record" satisfied the good reasons requirement). Although Plaintiff may disagree with the ALJ's ultimate conclusion, his decision declining to give controlling weight to Dr. Short's opinions was appropriate because the ALJ found those opinions inconsistent with

13

substantial evidence in the record and because Dr. Short primarily treated Plaintiff's mental rather than physical symptoms. As such, the ALJ's explanation provides sufficient detail to satisfy the good-reasons requirement and appropriately explains the disposition of the case to Plaintiff. S*ee Barncord v. Comm'r of Soc. Sec.*, No. 2:16-cv-389, 2017 WL 2821705, at *6 (S.D. Ohio June 30, 2017). Accordingly, the ALJ's analysis is supported by substantial evidence, and the ALJ did not err. *See id*.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED** and that judgment be entered in favor of Defendant.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date: December 10, 2018        /s/ Kimberly A. Jolson
                               KIMBERLY A. JOLSON
                               UNITED STATES MAGISTRATE JUDGE